## J. J. BIGGS v. JAS. M. HARRIS.

Where an apprentice, then nineteen years and two months old, was, in July, 1860, upon his master's removal from the State, hired out by him for the rest of that year and also for the year 1861 : *Held*, that it was *error* for the court to instruct the jury, "that if the consideration of the notes given for the value of the apprentice during the above years was not the assignment of the full unexpired term of the apprentice, but only a hiring by the master for the years 1860 and 1861, the plaintiff would be entitled to recover ;" and that he ought to have submitted the following instructions to the jury : Was it the effect of the transaction that the plaintiff *transferred his mastership* of the apprentice to the defendant ? If yea, he cannot recover ; if nay, the defendant is liable.

(*Futrell* v. *Vann*, 8 Ire. 402, approved.)

DEBT, tried before *Watts, J.*, at December Special Term 1869 of WAKE Court.

The plaintiff declared upon two bonds executed by the defendant July 27th, 1860, for $75.00 each, payable severally 1st January, 1861, and 1st January, 1862, to the plaintiff "for the hire of a boy." For the defendant evidence was given tending to show that the boy, free colored and nineteen years of age, had at May Term, 1860, of Wake County Court, been bound as an apprentice during his minority, to the plaintiff; that at the date of the notes the plaintiff was upon the eve of removing from the State, and that the notes were given for the hire of the boy for the rest of the year 1860 and for 1861 ; also that the notes were in fact given for the assignment of the full unexpired term of the apprenticeship. His Honor instructed the jury that if the consideration of the notes was the assignment of the full unexpired term of the apprentice, the plaintiff could not recover ; but if it was not such assignment, but only a hiring of the apprentice for 1860 and 1861, the plaintiff would be entitled to their verdict.

Verdict and judgment for the plaintiff; appeal by the defendant.

*C. M. Busbee*, for the appellant.

The assignment or transfer of an apprentice, or his services, is inconsistent with the nature of the trust, and against the policy of the law. Revised Code, chap. 5. *Musgrove* v. *Kornegay*, 7 Jon. 71; *Allison, et al.* v. *Norwood*, Bus. 414; *Goodbred* v. *Wells*, 2 D. & B. 476.

It is *contra bonos mores*, and against the policy of the law, for a master to *hire out an apprentice;* and a contract founded upon such consideration, will not be supported: *Hall* v. *Gardner*, 1 Mass., 296; *Ayer* v. *Chase*, 19 Pick., 556; *Graham* v. *Kinder*, 11 B. Mun. (Ky.) 62; *Huffman* v. *Rout*, 2 Met. (Ky.) 50. See also, *Davis* v. *Coburn*, 8 Mass. 172; *Stewart* v. *Ricketts*, 2 Humph. 151; *Tucker* v. *Magee*, 18 Ala. 99.

The case of *Futrell* v. *Vann*, 8 Ire. 402, relied on by plaintiff does not sustain his case, as it turned upon a promise made after the original contract was rescinded, upon sufficient consideration, to-wit : *the allowance of a certain credit, &c.*

At any rate it was a promise to pay for *past* services. See *Turner* v. *Vaughn*, 2 Wilson 339.

*Fowle & Badger* and *A. M.* and *R. G. Lewis,* contra.

READE, J. It is indispensable to the well-being of society that the young should be under the control of persons of experience until the mind is trained, and the manners and habits formed ; and with us the period of this dependence covers more than half of the average of human life. In the case of parents and children, natural affection is the guarantee

that this control will be exercised for the best interests of the child and society, and no other guarantee is sought. When the parent is lost then society takes the control, and the young are entrusted to guardians and masters; and because these are not supposed to have the natural affection of parents, they are put under the obligations that they will fill the place of parents, and they are required to do, not what a parent may or may not do at pleasure, but what a parent ought to do. To this end the appointing power selects or ought to select, as guardians of wards, and masters of apprentices, not men who may be able to give bonds, but men of integrity and moral worth as well, retaining the power to remove them for cause, and appoint others in their stead. It is one of the most delicate and responsible trusts which is committed to society, or which society can commit to its tribunals, the care of the young; those who are alone in the world.

But what would the care of the appointing power be worth, if the master who is selected, can transfer his autho.-ity to another as a matter of traffic? If this were allowed we should soon have a system of servitude worse than slavery: for in slavery the value of the property was a guarantee of careful treatment, but the master of an apprentice has neither the affection of a parent nor the interest of property. He must be trusted, therefore, mainly for his integrity, aided somewhat by a pecuniary obligation for faithfulness.

It may therefore be safely laid down that a master of an apprentice cannot transfer his *mastership* to another.

A master of an apprentice has, however, as a compensation for his care and responsibility, a right to the *services* of the apprentice, and he is not restrained from hiring him out to service for a day, or a month, or any such reasonable time; but still he must retain the *mastership*, and be liable for all

abuses of the trust. And a sufficient cause to remove a master would be, the putting the apprentice to improper servitude, or with an injudicious person.

In the case under consideration, his Honor was of the opinion that the master had the right to hire out the apprentice for any time less than the whole time of servitude. But this is not the rule. The rule is, that he cannot transfer the *mastership* for any time, not a day, not an hour; but he may transfer the *services*, and the length of time is not a matter of consideration, except in so far as it may be evidence of the intent to transfer the *mastership*. The master is not obliged in person to superintend the labor of the apprentice, but may put him under another, as under a mechanic to learn a trade, or a school master for instruction, in which case the school master has the immediate control, the master the general control, and the binding power the paramount control. This is a clear case where the appointing power ought to have revoked the binding, and selected another master; for the fact that the apprentice was bound in May, at the age of about nineteen years, and was hired out in July, for the balance of that year and for the next year, covering almost the whole period of servitude, and that upon the eve of the master's removing from the State, make it probable that the master was trifling with the trust, and ought to have been removed.

But the question remains, can the defendant take advantage of the wrongful act of the master. Is he not *in pari delicto ?* Unquestionably he is *in pari delicto*, and therefore we would not aid him; but the defendant is not asking us to aid him, it is the plaintiff who is seeking aid, and we will aid neither, the acts of both being wrongful, as against the policy of the law.

This is said upon the supposition that the fact be that the master did intend to abuse his trust, and to transfer the

mastership to the defendant. If he did, then the act was against public policy; if he did not, then the defendant cannot say, whatever the appointing power might have said, that the act was wrongful. In that case he would have been obliged to comply with his contract.

The question which ought to be submitted to the jury is: Was it the effect of the transaction that the plaintiff transferred his *mastership* of the apprentice to the defendant? If yea, then he cannot recover; if nay, then the defendant is liable: *Futrell* v. *Vann*, 8 Ire. 402.

